IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH DEFIORE | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1590 |
| | ) | |
| CITY RESCUE MISSION OF NEW CASTLE and JAMES HENDERSON | ) ) | Judge Cathy Bissoon |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-916 |
| | ) | |
| CITY RESCUE MISSION OF NEW CASTLE and JAMES HENDERSON | ) ) | Judge Cathy Bissoon |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I.      MEMORANDUM**

Pending before the Court are Defendants' motions to dismiss in Civil Action No. 12-1590 (Doc. 27) and 13-916 (Doc. 12).[1] In Civil Action No. 12-1590, Plaintiff Kenneth Defiore ("Plaintiff Defiore") has filed suit alleging Defendants violated certain provisions of the

---

[1] The Court finds it appropriate to address both motions to dismiss in a single Memorandum and Order as the issues presented in both matters are nearly identical (both parties seek redress under similar statutory authority for events that occurred in December 2011).  Issuance of this Memorandum and Order in no way consolidates these cases for trial, discovery purposes or otherwise.

Americans with Disability Act ("ADA"), the Fair Housing Act ("FHA") and the Pennsylvania Human Relation Act ("PHRA"). See generally Sec. Am. Compl. (Doc. 26). In Civil Action No. 13-916, Plaintiff the United States of America ("United States") has filed suit alleging Defendants violated certain provisions of the ADA and FHA. See generally Compl. (Doc. 1). Defendants argue that both Plaintiff Defiore and Plaintiff United States have failed to set forth plausible claims and, therefore, all claims should be dismissed. For the reasons stated herein, Defendants' motions to dismiss will be denied in both cases.

**FACTUAL BACKGROUND**

The facts relevant to both cases are as follows. Plaintiff Defiore is a blind, adult male. Sec. Am. Compl. ¶ 10.[2] Defendant City Rescue Mission of New Castle ("City Rescue") operates the Crossroads Shelter Program ("Crossroads") as part of its men's ministry program. Id. at ¶ 6. Crossroads provides temporary emergency shelter, food and spiritual counsel for men.[3] Defs' Br. pp. 3-5 (Doc. 28).

Plaintiff Defiore alleges that on or about December 5, 2011, he contacted Crossroads via telephone and requested emergency shelter. Sec. Am. Compl. ¶ 16. Plaintiff further alleges that he was denied entry to the shelter because he indicated that he would require shelter for his service animal, Gabby, a chocolate Labrador retriever. Id. at ¶ 18. In addition, Plaintiff alleges that he later contacted the Lawrence County Community Action Partnership ("LCCAP") for assistance and LCCAP employee Lynn Henry telephoned Crossroads on his behalf to request emergency shelter. Id. at ¶ 21. Again, Plaintiff was denied entry to the shelter. Id.

---

[2] From this point on, unless otherwise noted, citations to the record are to the docket in Civil Action No. 12-1590.
[3] Plaintiff Defiore and Plaintiff United States also have sued Defendant James Henderson in his capacity as Crossroads manager.

2

Both Plaintiff Defiore and Plaintiff United States contend that Defendants' refusal to provide Plaintiff Defiore shelter constitutes a discriminatory practice in violation of the ADA, FHA and PHRA (the PHRA claim is asserted in 12-1590 only).[4]  In addition, both seek injunctive and declaratory relief, as well and monetary damages.

Defendants' argument for dismissal of each complaint is three-fold: 1) as a religious organization Crossroads is exempt from the provisions of the ADA and FHA; 2) even if not exempt under the FHA, Crossroads does not fall under the provisions of the FHA because it does not operate a "dwelling" as defined under the FHA; and 3) even if not exempt under the ADA and FHA, providing Plaintiff with a reasonable accommodation presented an undue burden to Crossroads.  The Court will address each argument in turn.

## ANALYSIS

### A. Religious Exemption

Defendants argue that Crossroads is a religious organization and, therefore, exempt from the provisions of the ADA and FHA.  Defs.' Br. pp. 5-8.  Both the ADA and FHA provide exemption for religious organizations.[5]  Although the scope of the exemptions differ, the

---

[4] On July 5, 2012, Plaintiff Defiore filed a complaint of discrimination with the United States Department of Housing and Urban Development ("HUD").  Compl. ¶ 28 (Doc. 1 at Civil Action 13-916).  The Secretary of HUD conducted an investigation of the complaint, attempted conciliation without success and prepared a final investigation report.  Id. at ¶ 29.  On April 15, 2013, the Secretary issued a Charge of Discrimination, charging Defendants with engaging in discriminatory practices in violation of the Fair Housing Act.  Id. at ¶ 30.  On April 30, 2013, the Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and the United States filed its complaint against Defendants shortly thereafter.  Id. at ¶ 32.

[5] 42 U.S.C. § 12187 (ADA) states: The provisions of this subchapter shall not apply to private clubs or establishments exempted from coverage under Title II of the Civil Rights Act of 1964 (42 U.S.C. 2000-a(e) or to religious organizations or entities controlled by religious organizations, including places of worship.  42 U.S.C. 3607(a) (FHA) states: Nothing in this title shall prohibit a religious organization, association, or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society, from limiting the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose to persons of the same religion, or

3

threshold question is similar: is the defendant a religious organization as defined under the Act? Whether Crossroads qualifies for the ADA or FHA exemption is a mixed question of law and fact. See LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 226-227 (3d Cir. 2007).

    The ADA's exemption can apply only if Crossroads is a "religious organization" or is "controlled by a religious organization." See 42 U.S.C. § 12187.  The FHA's exemption can apply only if Crossroads is a "religious organization" or "operated, supervised or controlled by or in conjunction with a religious organization." See 42 U.S.C. 3607(a).[6]  Determination of whether an entity qualifies as a religious organization is often a straightforward exercise as many organizations have been deemed clearly religious, such as churches or synagogues. See E.E.O.C. v. Townley Engineering & Mfg. Co., 859 F.2d 610, 618 (9th Cir. 1988).  However, there are cases in which the determination is less obvious, most notably when an organization engages in both religious and secular activities. See U.S. v. Columbus Country Club, 915 F.2d 877, 883 (3d Cir. 1990).  This is such a case, and as such, the Court must determine if Crossroads's structure and purpose is primarily religious.[7]

---

from giving preference to such persons, unless membership in such religion is restricted on account of race, color, or national origin.

[6] Defendants' argument regarding religious exemption is not completely clear.  At different points in its briefing (in both cases), Defendants argue that Crossroads is a religious organization and at other points argue that City Rescue is a religious organization.  See Defs.' Br. at 5 and 7 (Doc. 28).  This vacillation makes it unclear whether Defendants' argument rests on Crossroads's alleged status as a religious organization or on City Rescue's alleged status as a religious organization that operates/controls Crossroads, or both.  As both the ADA and FHA provide exemption for religious organizations and certain entities controlled by religious organizations, this lack of clarity is not critical to the Court's analysis at this stage.  See U.S. v. Columbus Country Club, 915 F.2d 877, 883 (3d Cir. 1990).

[7] The Court has found no case law within the Third Circuit, and the parties present none, in which the Court of Appeals for the Third Circuit establishes a test for the determination of a religious organization under the ADA or FHA.  However, the Court finds instructive cases in which the Court of Appeals has established a test for determining the issue under Title VII.  See LeBoon, 503 F.3d at 226.  This test is similar to the test followed by the limited number of federal courts outside the Third Circuit that have addressed the issue under the ADA or FHA.

Here, Defendants contend that Crossroads is a Christian ministry that operates as a privately owned and operated shelter, independent from any government funding or assistance. Defs.' Br. at p. 5.  To support this argument, Defendants cite to City Rescue's use of an Ichthys logo, crosses that adorn its building and the organization's one hundred year history in the New Castle community as a Christian ministry that seeks to commune with other Christians and spread the word of God. Id. at 7.  The Court finds this evidence insufficient to determine whether Crossroads's (or City Rescue's) structure and purpose is primarily religious.  See LeBoon, 503 F.3d at 226 (whether an organization is "religious" for purposes of an exemption must be measured with reference to the particular religion identified by the organization).

In LeBoon the Court of Appeals for the Third Circuit suggested numerous factors to determine whether a Jewish community center could be considered a religious organization under Title VII.  The factors considered were: (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists. Id. at 225.

As the Court of Appeals noted, the decision whether an organization is "religious" for purposes of the exemption cannot be based on its "conformity to some preconceived notion of what a religious organization should do, but must be measured with reference to the particular religion identified by the organization." Id. at 226-227.  This Court sees no reason why this

5

analysis should not apply to ADA and FHA claims as well. See Columbus Country Club, 915 F.2d at 883.

Based on the fact-specific nature of determining religious organization status, the Court finds the record insufficient to make a determination as to whether Crossroads is a religious organization (or controlled, operated or supervised by a religious organization, City Rescue). While the Court does not challenge the accuracy of the alleged factors in favor of religious organization status, these allegations, on their own, and in light of Defendants' lack of clarity in briefing, are insufficient to establish entitlement to the exemption under either statute.

Plaintiffs in both cases are entitled to discovery to identify and weigh the aforementioned commonly considered factors to determine what constitutes a religious organization.[8] Therefore, Defendants motions are denied.

## B. Application of the FHA – "Dwelling" and "Sale or Rental" of a Dwelling

### I. "Dwelling" as defined under the FHA

Defendants also argue that the FHA does not apply to Crossroads because emergency overnight shelters are not "dwellings" as defined under the FHA. Defs.' Br. at p. 12. Section 3604(f)(1) of the FHA prohibits discrimination based on handicap in transactions concerning dwellings. The FHA defines a "dwelling" as: "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as a residence by one or more families [...]" 42 U.S.C. § 3602 (b). While the FHA does not define the term "residence," multiple courts have noted that the ordinary meaning of the term is: "a temporary or permanent dwelling place,

---

[8] Even if Crossroads was determined to be a religious organization (or controlled, operated or supervised by a religious organization) under the provisions of the FHA, that would not warrant dismissal of either complaint at this stage. The language of the FHA exemption allows religious entities to limit occupancy to members of the same religion. The reason for Plaintiff's denial of shelter is still very much unresolved. It is not clear if Plaintiff was turned away because of Crossroads's desire to provide preferential treatment to members of its own religion, or, as the record suggests, Plaintiff was turned away based on his need to have a service dog.

abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." United States v. Hughes Mem. Home, 396 F.Supp. 544, 549 (W.D. Va. 1975) (quoting Webster's Third International Dictionary 1931); see also Columbus Country Club, 915 F.2d at 881.

In evaluating whether or not a drug and alcohol treatment center qualified as a dwelling under the FHA, the Court of Appeals for the Third Circuit has applied a two-part test. In Lakeside Resort Enterprises, LP v. Board of Sup'rs of Palmyra Tp., 455 F.3d 154, 158 (3d Cir. 2006), the court first decided whether the facility was intended or designed for occupants who intend to remain in the facility for any significant period of time and second, whether those occupants would view the facility as a place to return to during that period. Id.. The court determined that the facility in that case qualified as a dwelling under the FHA because, in part, residents stayed there for slightly more than two weeks on average (but sometimes longer) and residents treated the facility like a home. Id. at 159. See also Woods v. Foster, 884 F. Supp. 1169 (N.D. Ill. 1995)(determining that a homeless shelter was a dwelling under similar analysis).

Defendants argue that Crossroads is distinguishable from the types of facilities in Lakeside and Woods because Crossroads subjects participates to a highly regimented schedule in which residents are required to have group meeting and attend church services, and residents do not have individual rooms and are not allowed to personalize or decorate their sleeping space. Defs.' Br. at pp. 13-14. Although not explicitly stated, Defendants essentially argue that Crossroads is not intended to be treated as a home for the duration of a resident's stay. The Court finds this argument unavailing and finds multiple aspects of Crossroads to be identical to those discussed in Lakeside and Woods: the expected extended length of stay of residents (1-90 days as stated in the Crossroads Purpose Statement); the fact that residents receive mail at Crossroads; that residents have medication dispensed by Crossroads staff; and that residents

return to their sleeping areas in the evening. Id. at Ex. B; See also Lakeside, 455 F.3d at 159-160.

Although Crossroads is not designed to be a place of permanent residence, Defendants have not offered sufficient evidence to establish that Crossroads is not a facility intended to house persons for a significant period of time and a facility that residents view as their home during their stay. Woods, 884 F.Supp. at 1174 (the homeless are not visitors or those on a temporary sojourn in the sense of motel guests . . . it cannot be said that the people who live [in the shelter] do not intend to return – they have nowhere else to go). Therefore, Defendants motions are denied on this basis as well.

 II. "Sale" or "Rental" under the FHA

Defendants next argue that the provisions of the FHA do not apply to Crossroads because Crossroads does not "sell" or "rent" a dwelling as defined under the FHA. Defs.' Br. at p. 16. Section 3604(f)(1) of the FHA states that it is unlawful: "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[.]" The FHA defines "to rent" as "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e). Both parties agree that this definition does not require that the consideration be paid by the occupant, however, Defendants argue that the statute does not apply here because the only consideration Crossroads demands and receives from residents is an agreement that each resident receive Christian ministry throughout their stay. Defs.' Br. at 16.

What qualifies as consideration under the FHA has been examined by a limited number of courts and this Court finds that resolution of the issue will turn on whether Crossroads receives consideration for a resident's stay – whether it be from federal or other funding directed to subsidizing the costs of providing housing to the homeless or whether shelter residents provide

8

some form of consideration for their stay. See Woods, 884 F. Supp. at 1175 (holding that defendants' receipt of $125,000 federal HUD grant was "undoubtedly consideration"). At this stage, the record does not contain sufficient evidence to make the determination. Therefore, Defendants motions are denied on this basis as well.

### C.    Undue Burden Argument

Defendants next argue that accommodation of Plaintiff Defiore and his service animal would have imposed undue financial and administrative burden. Defs.' Br. at 8-9. Defendants list a number of alleged burdens associated with providing shelter to Plaintiff Defiore and his service animal, including, but not limited to, triggering another resident's allergy to pet dander, fleas, errant hairs, or even triggering a volatile emotional response from another resident caused by past (and latent) trauma.. Id. at 10.

The fundamental flaw in Defendants' argument is that all burdens alleged are completely speculative. At no point did Crossroads inquire as to what accommodation Plaintiff required. As Defendants note, a highly fact-specific inquiry is required to determine what accommodations are needed and what burdens result. Id. at 9 (citing Hovsons, Inc. v. Township of Brick, 89 F. 3d 1096, 1104 (3d Cir. 1996)). The Court agrees with this proposition and finds that the issue cannot be properly addressed without discovery. Therefore, Defendants motions are denied on this basis as well.[9]

### CONCLUSION

For all the reasons stated above, Defendants motions to dismiss in Civil Action Nos. 12-1590 and 13-916 are denied.

---

[9]    As the Court has determined that Plaintiff Defiore's federal claims survive, it is appropriate that Plaintiff Defiore's state claim (PHRA) survives as well.

## II.   ORDER

For all the reasons stated herein, the Court hereby orders that Defendants' motion to dismiss in Civil Action No. 12-1590 (Doc. 27) is **DENIED**.  In addition, Defendants' motion to dismiss in Civil Action No. 13-916 (Doc. 12) is **DENIED** as well.

**IT IS SO ORDERED**.

s/ Cathy Bissoon<br>Cathy Bissoon<br>United States District Judge

December 12, 2013

cc (via e-mail):

All counsel of record.